# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

LOCAL UNION NO. 124 I.B.E.W. PENSION TRUST FUND, a Trust Fund, )
)
Plaintiffs, )
)
v. ) Case No. 4:18-CV-0221-BCW
)
LAN-TEL COMMUNICATIONS SERVICES, INC., *et al.* )
)
Defendants. )

## DEFENDANT'S MOTION FOR RELIEF FROM JUDGMENT WITH SUGGESTIONS IN SUPPORT

COMES NOW Defendant Lan-Tel Communications Services, Inc. ("Lan-Tel"), by and through undersigned counsel, and pursuant to Fed. R. Civ. P. 60(b), and moves this Court for an order vacating and setting aside the Judgment in this matter.

**I.    STATEMENT OF RELEVANT FACTS**

   *A.    Procedural Background*

   1.    This lawsuit was filed on March 21, 2018.  (Doc. 1)

   2.    Lan-Tel was originally represented by attorney Eric Roby.  (Doc. 5: Lan-Tel's Answer filed by Eric Roby)

   3.    Plaintiffs submitted Requests for Admissions to Lan-Tel.  However, Mr. Roby, Lan-Tel's attorney, failed to respond to the Admissions. (Exhibit 1: Affidavit of Scott Niemeyer, ¶ 5)

   4.    Plaintiffs then filed a Motion for Summary Judgment, relying in large part upon those Admissions to which Mr. Roby failed to respond.  (Doc. 22)

5. After Mr. Roby sought numerous requests for extension of time to respond to Plaintiffs' Motion for Summary Judgment—but failed to do so—this Court granted Plaintiffs' Motion for Summary Judgment and entered judgment against Lan-Tel on June 18, 2019, in the amount of $352,996.45. (Docs. 37, 38, &42)[1]

6. On July 18, 2019, a Writ of Garnishment was issued to Lan-Tel's bank, Liberty Bank. (Docket 39-40) Shortly thereafter, Lan-Tel learned that its attorney, Eric Roby, had allowed the judgment to be entered against it but, based on communications with Mr. Roby, believed it would get resolved. The garnishment was thereafter released on July 26, 2019. (Doc. 41; Exhibit 1 at ¶ 5)

7. On September 23, 2019, a second garnishment was served on Lan-Tel's bank. (Doc. 46)

8. Upon learning of the second garnishment, Lan-Tel relieved its prior counsel, Eric Roby, and retained undersigned counsel.

### B. *Efforts to Resolve the Matter Without Further Judicial Intervention*

9. Undersigned counsel and Plaintiffs' counsel negotiated a release of the garnishment in exchange for Lan-Tel making of good-faith payments toward the amount of the judgment. Counsel for Plaintiff and Counsel for Lan-Tel also agreed to discuss a more complete resolution of the Judgment.

10. Since that time, undersigned counsel and Plaintiffs' counsel engaged in efforts, albeit unsuccessfully, to negotiate a complete resolution. However, the parties did agree that Lan-Tel would make good-faith payments toward any amounts owed while Lan-Tel sought other means of resolution.

---

[1] The Court initially entered Judgment on June 18, 2019. However, the Court issued a second Order granting Plaintiffs' Motion for Summary Judgment on August 5, 2019 but in the same amount.

11. As a result, undersigned counsel sought to engage Mr. Roby's malpractice carrier to ascertain whether there would be an avenue to have the malpractice carrier participate in a resolution of the Judgment without having to incur the costs (and additional damages) associated with filing this Rule 60 Motion, and further requiring the Court's intervention. However, to date, undersigned counsel has not had success in doing so.

12. Nevertheless, during these efforts, Lan-Tel has continued to make monthly good-faith payments toward the judgment to avoid further garnishment and has kept open-lines of communication with Plaintiffs' counsel.

### C. *Lan-Tel Discovers Other Instances of Mr. Roby's Failure to Represent It.*

13. After being retained in this action, undersigned counsel performed a search of PACER and other state-court filing systems and learned that Mr. Roby had also failed to respond to Requests for Admissions in a similar lawsuit, *Construction Industry Laborers Pension Fund, et al. v. Lan-Tel Communications Services, Inc.* Case No. 4:19-cv-00276-FJG (W.D. Mo.). Those unanswered Requests for Admission also formed the basis for a summary judgment motion in that matter.

14. Further, there were other lawsuits in state court that Mr. Roby—as Lan-Tel's registered agent—had been served with but had apparently not taken any action to defend Lan-Tel or notify it of the suit, which resulted in default judgments. (Exhibit 1 at ¶ 6) Those cases include:

- Laclede Gas Company v. Lan-Tel, Jackson County Case No. 1716-CV16914;
- Spire Missouri, Inc. v. Lan-Tel, Jackson County Case No. 1916-CV05811;
- Laclede Gas Company v. Lan-Tel, Jackson County Case No. 1716-CV16568;

15. In yet another case, *Moritz v. Lan-Tel Communications Services, Inc.*, Jackson County Case No. 1716-CV31101, Mr. Roby entered into a settlement agreement, without authority

3

of Lan-Tel, and failed to notify Lan-Tel of the settlement, which resulted in an additional attorney-fee award relating to the costs associated with enforcing the settlement. (Exhibit 1 at ¶ 7).

16. Similarly, based on information provided by Plaintiffs' counsel in this case, Mr. Roby apparently led Plaintiffs' counsel to believe that there would be a Settlement Agreement signed in this matter after the Judgment was entered. However, Lan-Tel was never made aware of such an Agreement, and never agreed to such an Agreement. (Exhibit 1 at ¶ 5)

17. In yet another case, *Rodriguez v. Lan-Tel Corporation*, Jackson County Case No. 1816-CV17363, Mr. Roby was served with the summons, requested additional time to file an answer, but never filed said answer.

## II. SUGGESTIONS IN SUPPORT

Fed. R. Civ. P. 60(b)(6) allows the Court broad discretion to grant relief from a judgment for "any … reason that justified relief." Generally, under Rule 60(b)(6) there must be a showing of extraordinary circumstances. *Buck v. Davis*, 137 S.Ct. 759, 777 (2017) (internal citations and quotations omitted). A motion under Rule 60(b)(6) need only be brought within a reasonable time under the circumstances. Fed. R. Civ. P. 60(c). There is no has no hard and fast deadline.

Here, this Motion is being brought within a reasonable time and the circumstances under which Judgment was entered against Lan-Tel are truly extraordinary. Accordingly, this Court should exercise its discretion and grant Lan-Tel relief under Rule 60(b)(6).

### A. *This Motion Is Being Made Within a Reasonable Time*

This Motion is being made within a reasonable time under the circumstances. Upon learning of the judgment and retaining counsel, Lan-Tel's new counsel sought to negotiate with Plaintiffs to determine if a resolution could be obtained short of further judicial intervention. When that was unsuccessful, Lan-Tel's new counsel sought to involve Lan-Tel's prior counsel's

malpractice carrier to ascertain if there may be a means by which the Judgment could be resolved short of further Court intervention. However, after allowing a reasonable time for Mr. Roby's malpractice carrier to review the circumstances, and without having any success in getting the carrier to commit to engaging in a resolution, Lan-Tel now seeks relief under Rule 60(b)(6).

Under these circumstances, it was reasonable for Lan-Tel and its new counsel to try to exhaust other means of resolution prior to expending the time and resources necessary in filing this Motion. Further, this Motion is being made well within the one-year time limit for Motions under Rule 60(b)(1)–(3); a time limit that does not apply to Rule 60(b)(6) motions.

### B. *Extraordinary Circumstances Exist to Justify Vacating and Setting Aside the Judgment under Rule 60(b)(6)*

Rule 60(b)(6) is available in extraordinary circumstances. *Buck v. Davis*, 137 S.Ct. 759, 777 (2017) (internal citations and quotations omitted). Where "exceptional circumstances have denied the moving party a full and fair opportunity to litigate [its claim] and have prevented … adequate redress" relief under Rule 60(b)(6) is appropriate. *Harley v. Zoesch*, 413 F.3d 866, 871 (8th Cir. 2005) (internal citations omitted).

The Eighth Circuit in *Heim v. Commissioner of Internal Revenue Service*, 872 F.2d 245 (8th Cir. 1989) determined that a tax court did not abuse its discretion in denying relief under Rule 60(b)(6) after an attorney entered into unauthorized stipulations before the tax court and failed to advise the clients of the adverse opinion of the tax court. While the Court in *Heim* did not find that the district court abused its discretion in denying relief under Rule 60(b)(6), the Court did distinguish two cases in which relief *was* found to be appropriate in other circuits. And, those distinguished cases are much more akin to the present situation.

The first case was *Boughner v. Sec. of Health Educ. & Welfare*, 572 F.2d 976 (3rd Cir. 1978). In *Boughner*, clients represented by attorney Peter Krehel had summary judgment entered

against them after the Motions for Summary Judgment went unopposed[2]. In that case, the Third Circuit determined that Mr. Krehel's actions essentially left his clients unrepresented. *Id.* The Third Circuit also was compelled to grant the Rule 60 Motion because the entry of judgment precluded the matter to be presented on the merits—a circumstance true in this case as well. *Id.* at 979. ("[T]he entry of summary judgments precluded an adjudication on the merits … thus constituting … 'extreme and unexpected hardship …'"). The *Boughner* court determined that when an attorney's "egregious conduct amount[s] to nothing short of leaving his clients unrepresented" relief under Rule 60(b)(6) is appropriate. *Heim v. Commissioner of Internal Revenue Service*, 872 F.2d 245 (8th Cir. 1989) (quoting and distinguishing *Boughner v. Sec. of Health Educ. & Welfare*, 572 F.2d 976 (3rd Cir. 1978)[3].

The second case distinguished by the Eighth Circuit was *United States v. Cirami*, 563 F.2d 26 (2nd Cir. 1977). The Eighth Circuit distinguished the case from the circumstances in *Heim* because in *Cirami* the client's attorney had failed to oppose a motion for summary judgment, due to a mental disorder. The *Cirami* Court characterized the attorney's conduct as a "constructive disappearance." The *Heim* court further distinguished *Cirami* because, unlike in the *Heim* matter, there had not been an adjudication on the merits.

Here, Mr. Roby's actions are akin to those described *Boughner* and *Cirami* as Mr. Roby's actions and inactions effectively left Lan-Tel unrepresented (not only in this case but in others); resulting in Lan-Tel being deprived of a full and fair opportunity to defend itself against Plaintiffs' claims on the merits. The facts demonstrate that Mr. Roby, failed to notify Lan-Tel of newly filed

---

[2] There had also been 52 other clients of Mr. Krehel for which he failed to oppose summary judgment motions. *Boughner v. Sec. of Health Educ. & Welfare*, 572 F.2d 976 at 977 (3rd Cir. 1978).

[3] In full candor to the Court, the Eighth Circuit's opinion in *Giles v. Saint Luke's Northland-Smithville*, 908 F.3d .365, 370 (8th Cir. 2018) stated, "Rule 60(b)[6] has never been a vehicle for relief because of an attorney's incompetence or carelessness." (Bracket around "6" in original). However, under the circumstances, Lan-Tel submits that Mr. Roby's actions go beyond mere carelessness or incompetence and constitute abandonment, leaving Lan-Tel unrepresented.

litigation, and the status of litigation Mr. Roby was involved with on behalf of Lan-Tel. Moreover, Mr. Roby failed repeatedly, in this case and in others, to respond to discovery, including requests for admissions; to responsive pleadings; and to dispositive motions. These failures resulted in default and summary judgment being entered against Lan-Tel in this and other cases. Further, Mr. Roby apparently attempted to and, in the *Moritz* matter did, settle matters without Lan-Tel's authority. Moreover, like in *Cirami*, it appears that Mr. Roby's actions were, at least in part, the result of a mental disorder. Undersigned counsel for Lan-Tel, in conversations with Mr. Roby's former law firm, has been informed that Mr. Roby indicated he has been diagnosed with Depression Disorder and that Mr. Roby indicated that disorder affected his ability to represent his clients.

All of this leads to but one conclusion: Mr. Roby's actions went beyond a mere lack of competence but effectively left Lan-Tel without representation at all. Accordingly, this Court should use its discretion under Rule 60(b)(6) to grant Lan-Tel relief from the Judgment.

### C. *If the Judgment were vacated and the case adjudicated on the merits, the outcome would differ because Lan-Tel has meritorious defenses.*

Lan-Tel has meritorious defenses that would significantly change the result if the case proceeded on the merits. Importantly, when considering a party's meritorious defenses, "[t]he underlying concern is whether there is some possibility that the outcome after a full trial will be contrary to the result achieved by default." *Stephenson v. El-Batrawi*, 524 F.3d 907, 914 (8th Cir. 2008) (internal citations and quotations omitted, cleaned up). The Court does not weigh the evidence but determines only if the proffered evidence would permit a finding for the defaulting party. *Id.* Here, the proffered evidence establishes that after a full and fair trial, there is a significant possibility that the result would be contrary to the judgment.

By way of background, Plaintiffs are benefit funds for workers covered by the collective bargaining agreement (CBA) for the International Brotherhood of Electrical Workers (IBEW). Pursuant to that CBA, certain funds are to be paid certain contributions for each hour one of its members' works. In this lawsuit, Plaintiffs seek allegedly unpaid contributions and dues, along with liquidated damages, interest, and attorney fees.

Plaintiffs determined there were shortfalls in amounts paid to the Plaintiffs in the amount of $226,640.96. (Exhibit 3, Contributions Column) In making this determination, Plaintiffs relied upon an "audit" of Lan-Tel's payroll performed by CBAC. However, there are numerous obvious errors with CBAC's audit that constitute meritorious defenses. Some of the largest errors[4], which clearly demonstrate that Lan-Tel has meritorious defenses, are explained below.

### 1. *Classification Error*

Under the CBA, different position classifications are entitled to different amounts of pay and contributions to different, or additional, benefit funds. (Exhibit 2: CBA at pp.7–11) For example, the positions of Full Technicians, Senior Technicians, and Master Technicians under the CBA are entitled to contributions to the Annuity and Pension Funds while other positions are not. (Exhibit 2 at pp. 7–8) CBAC's audit identified employee Nicholas Shepard as an employee entitled to such contributions. (Exhibit 3: CBAC's Audit showing unpaid contributions to the pension and annuity funds) However, in order to be qualified for one of these positions, the individual needs what is known as a BICSI Certification. (Exhibit 2 at pp. 10–11) Lan-Tel has no record of Mr. Shepard having a BICSI Certification during the period of the audit. (Exhibit 1 at ¶ 8) As a result, CBAC incorrectly classified Mr. Shepard as an employee entitled to receive Annuity and Pension

---

[4] Not all errors/defenses are included in this Motion but rather the most significant ones are included to demonstrate Lan-Tel has meritorious defenses that would potentially result in a significantly different judgment if the case were permitted to be adjudicated on the merits—to include discovery into CBAC's audit, methodology, and documents relied upon.

contributions—a mistake, in and of itself, that would reduce the alleged shortfall in contributions by $50,956.58[5].

### 2. *Inclusion of Project Managers in the Audit*

CBAC's audit also included project managers as individuals entitled to dues, contributions, and, as a result, liquidated damages and interest. However, project managers are not covered by the CBA as they are not performing positions outlined in the CBA. (Exhibit 1 at ¶ 9) The project managers included in CBAC's audit were Sean McBee, William Lambert, and John Clark. (Exhibit 1 at ¶ 9) Removing these three individuals from the audit would reduce the purported shortfall of contributions by $68,481.46. (Exhibit 3; Exhibit 5, pp 4–5)

### 3. *Inclusion of Non-Wage Reimbursements*

The CBA only requires that contributions be submitted for wages paid. (Exhibit 2 at pp. 7–8), showing the hourly wages and the amount of contributions to each fund) However, it is not uncommon for an employer such as Lan-Tel to reimburse an employee for materials they purchased, mileage, or other work-related expenses. CBAC's audit apparently included these reimbursements as wages and claimed unpaid contributions for those amounts. However, many of those amounts were clearly for reimbursements. (Exhibit 1 at ¶ 10; Exhibit 1-A) Removing these amounts from the audit would reduce the alleged contribution shortfall by $20.980.41(Exhibit 5 p. 6)[6]

### 4. *Inclusion of a Payments made to Universal Technologies Employees*

Lan-Tel had been in discussions to purchase another company, Universal Technologies. (Exhibit 1 at ¶ 11) During the negotiations, Lan-Tel agreed to make a loan to Universal

---

[5] For ease of reference, attached hereto as Exhibit 5 are the data taken from the CBAC's audit demonstrating how Lan-Tel arrived at that amount. (Exhibit 5 pp. 1–3 for "Classification Error")
[6] The dates for each reimbursement payment within Exhibit 1-A match to entries in CBAC's audit for which CBAC asserted unpaid contributions. These entries should be removed from the audit entirely.

Technologies so that it could meet its payroll obligations in March and April of 2017. (*Id.*) However, for convenience, Lan-Tel paid Universal Technologies Employees' directly. (*Id.*) In the end, however, Lan-Tel decided not to purchase Universal Technologies but did agree to hire many Universal Technology employees as of May 2017. (*Id.*) CBAC's audit included the amounts Lan-Tel paid on behalf of Universal Technologies in March and April 2017 even though those employees were not Lan-Tel employees until May 2017; as demonstrated by their Dues Information Cards. (Exhibit 3; Exhibit 4 Due's Cards for Universal Employees) This error would reduce the alleged contribution shortfall by $24,439.37. (Exhibit 5 p. 7)[7]

There are numerous other errors that would further reduce the purported shortfall. However, based upon these four errors alone, the alleged shortfall would be reduced by at least $164,857.81[8], plus the associated liquidated damages and interest. This demonstrates not only meritorious defenses to Plaintiffs' claims, but that allowing the Judgment to stand simply because Lan-Tel's prior attorney essentially left Lan-Tel unrepresented constitutes extraordinary circumstances justifying relief from the judgment.

### III.    CONCLUSION

Lan-Tel has demonstrated that the egregious failures of its prior attorney, effectively leaving Lan-Tel unrepresented, which constitute exceptional circumstances warranting relief from judgment under Fed. R. Civ. P. 60(b)(6). Further, Lan-Tel has demonstrated that the results, after a fair and full trial, could be significantly different than the judgment. As a result, Lan-Tel

---

[7] To total number attributable to those individuals identified in Exhibit 4 which during March and April 2017 before they became employees of Lan-Tel.

[8] While Lan-Tel proffers this evidence and testimony in support of this motion to demonstrate a meritorious defense, the evidence presented is not intended to limit evidence that could be presented should this Court grant relief from Judgment.

respectfully requests that this Court enter an order vacating the Judgments in this matter, and setting a case management conference to establish a deadline to resolve this matter on the merits.

Respectfully submitted,

**ENSZ & JESTER, P.C.**


/s/ Christopher M. Napolitano
WESLEY J. CARRILLO    MO #61199
CHRISTOPHER M. NAPOLITANO MO #66610
1100 Main Street, Suite 2121
Kansas City, Missouri 64105
Telephone: 816-474-8010
Facsimile: 816-471-7910
E-mails: wcarrillo@enszjester.com
cnapolitano@enszjester.com
**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that, on February 19, 2020, the above and foregoing was electronically filed with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record and a true and correct copy of the above and foregoing was sent via U.S. Mail, first-class, postage prepaid, to the following:

Michael G. Newbold
John Joseph Westerhaus
Arnold, Newbold, Sollars & Hollins PC
1100 Main Street, Suite 2001
Kansas City, MO 64105-5178
**ATTORNEYS FOR PLAINTIFFS**

/s/ Christopher M. Napolitano
**ATTORNEYS FOR DEFENDANTS**