IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

LOCAL UNION NO. 124 IBEW PENSION )
TRUST FUND, et al., )
)
Plaintiffs, )
)
v. ) **No. 4:18-cv-00221-BCW**
)
LAN-TEL COMMUNICATIONS SERVICES, INC., )
)
Defendant. )

## MEMORANDUM IN OPPOSITION
## TO
## DEFENDANT'S MOTION FOR RELIEF FROM JUDGMENT

John J. Westerhaus, MO Bar No. 65266
ARNOLD, NEWBOLD, SOLLARS & HOLLINS, P.C.
1100 Main Street, Suite 2001
Kansas City, Missouri 64105
Telephone:     816-421-5788
Facsimile:     816-471-5574

**ATTORNEYS FOR PLAINTIFFS**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| LOCAL UNION NO. 124 IBEW PENSION TRUST FUND, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 4:18-cv-00221-BCW |
| LAN-TEL COMMUNICATIONS SERVICES, INC., | ) ) | |
| Defendant. | ) ) | |

## STATEMENT OF UNCONTROVERTED MATERIAL FACTS ("SUMF")

1.   Plaintiffs filed a complaint against Lan-Tel on March 21, 2018. (ECF No. 1).

2.   Lan-Tel was originally represented by attorney Eric D. Roby ("Mr. Roby"), who filed an answer to Plaintiffs' Complaint on April 19, 2018. (ECF No. 5).

3.   The Court entered its Rule 16 Notice on April 20, 2018, requiring a Rule 26 conference and participation of the parties in a scheduling conference. (ECF No. 6).

4.   Pursuant to the Court's Rule 16 Notice, Mr. Roby and Mr. Westerhaus (Plaintiffs' Counsel) jointly discussed, negotiated, drafted, and filed a proposed scheduling order on May 25, 2018 (ECF No. 8; Westerhaus Affidavit ("Westerhaus Aff."), ¶4, attached hereto as "Exhibit "B"). Attorneys for both parties also participated in the scheduling conference with U.S. District Court Judge Brian C. Wimes, held on June 18, 2018. (ECF No. 11).

5.   Mr. Roby and Mr. Westerhaus counsel engaged in regular communications regarding the case from its inception, including facilitating the completion of a payroll audit prior to mediation and the scheduling of the mediation itself. (Westerhaus Aff., ¶4)

6.      Plaintiffs' auditor, Amy Rote from Construction Benefits Audit Corporation ("CBAC"), attempted to reach representatives from Lan-Tel to schedule and conduct an audit, but Lan-Tel was unresponsive. Through communications with counsel for both parties, the audit was scheduled and conducted on July 10, 2018. (Rote Affidavit ("Rote Aff."), ¶2-4) (Attached hereto as Exhibit "A"))

7.      Representatives for Plaintiffs and Lan-Tel, along with counsel for each, participated in mediation on November 5, 2018 with Jill A. Morris, MAP Director, as required by MAP General Order Art. V(E). The mediation was unsuccessful in resolving the issues between the parties. (Westerhaus Aff., ¶¶5-6)

8.      In correspondence with Mr. Roby after mediation and later via Requests for Production and Requests for Admissions (ECF Nos. 13-14), Plaintiffs' counsel requested documents from Lan-Tel to support Lan-Tel's stated audit objections, but Lan-Tel never provided any responsive documents. (*See* ECF No. 50, Exhibit 1, ¶ 5.; Westerhaus Aff., ¶¶7-8, 15-19)

9.      Plaintiffs' auditor, Amy Rote from CBAC, also regularly corresponded with representatives from Lan-Tel to obtain corroborating and substantiating information from Lan-Tel to support its audit objections; despite repeated contacts and requests for information, no additional information related to the audit objections was ever provided to CBAC or Plaintiffs. (Rote Aff., ¶¶9-11)

10.     Mr. Roby engaged in the discovery process, filing several motions for extension of time to answer Plaintiffs' requests for documents and admissions. (ECF Nos. 15, 17 (requests for extensions); ECF Nos. 16, 18 (Court's granting of extensions)).

11.     Plaintiffs filed a Motion for Summary Judgment on February 8, 2019, with suggestions in support of same and several evidentiary exhibits. (ECF Nos. 19-22; Westerhaus Aff., ¶9)

12. Lan-Tel's counsel remained active in the matter, seeking *five* requests for extension of time to respond to Plaintiffs' Motion for Summary Judgment, all of which were unopposed by Plaintiffs:

    a.     Filed March 1, 2019 (ECF No. 23); denied as moot (ECF No. 27)

    b.     Filed March 8, 2019 (ECF No. 24); denied as moot (ECF No. 27);

    c.     Filed March 15, 2019 (ECF No. 25); denied as moot (ECF No. 27);

    d.     Filed March 22, 2019 (ECF No. 26); granted (ECF No. 27); and

    e.     Filed March 29, 2019 (ECF No. 28); granted (ECF No. 31).

13. The Court, having received five one-week requests for extension, ultimately scheduled a hearing for April 2, 2019 to determine the length of time required for Lan-Tel to meaningfully respond to Plaintiffs' motion. Mr. Roby and Mr. Westerhaus appeared at the hearing via telephone (ECF No. 32), and after questioning both sides, the Court granted Mr. Roby's requests for time extensions.

14. Plaintiffs continued to follow the Court's scheduling order, filing proposed exhibit lists (ECF Nos. 33, 35), a proposed witness list (ECF No. 34), and proposed findings of fact (ECF No. 36) as ordered.

15. The Court granted Plaintiffs' motion for summary judgment on June 18, 2019, but ordered Plaintiffs to provide a proposed judgment with specific damage awards to be provided to each Plaintiff (ECF No. 37). The Court entered a revised Order on August 5, 2019 (ECF No. 42) delineating the amounts owed to each Plaintiff.

16. The total amount of the judgment awarded to Plaintiffs against Lan-Tel was $352,996.45 (ECF No. 42).

17. Plaintiffs moved to enforce its judgment, filing a garnishment of Lan-Tel's bank accounts on July 18, 2019 (ECF Nos. 39, 43; Westerhaus Aff., ¶11).

18. Mr. Roby remained active in the matter, filing a motion to quash Plaintiffs' garnishment on July 25, 2019 (ECF No. 40). After discussing the matter with Mr. Roby, Plaintiffs agreed to withdraw the garnishment the next day, July 26, 2019 (ECF No. 41), and the motion was ultimately denied as moot (ECF No. 45). (Westerhaus Aff., ¶11).

19. Plaintiffs filed and served a second garnishment on Lan-Tel's bank on September 23, 2019 (ECF Nos. 44, 46; Westerhaus Aff., ¶12)).

20. Plaintiffs agreed to release the second garnishment (ECF No. 47) after being notified by Lan-Tel that it was terminating Mr. Roby's representation to hire new counsel. Mr. Napolitano and Mr. Carrillo from Entz and Jester, P.C. entered their appearances in this matter a few days later (see ECF Nos. 48, 49; Westerhaus Aff., ¶12).

21. Lan-Tel has avoided further garnishments because it has been making good faith monthly payments toward the judgment. Mr. Napolitano and Mr. Westerhaus have regularly corresponded concerning potential settlements, but have not reached an agreement agreeable to the Parties. (Westerhaus Aff., ¶¶ 13-14).

22. As of February 28, 2020, Lan-Tel has made good-faith payments towards the June 18, 2019 judgment amount. Its payments to date total $45,000.00. Its next payment of $5,000.00 is due on or before April 1, 2020. (Westerhaus Aff., ¶ 14).

23. After reducing the judgment by the amount of Lan-Tel's payments to date, and after application of post-judgment interest at a rate of 2.00%, the balance owed to Plaintiffs from the original judgment is $312,199.07 as of April 1, 2020. (Westerhaus Aff., ¶ 14).

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

LOCAL UNION NO. 124 IBEW PENSION ) 
TRUST FUND, et al., )
)
                    Plaintiffs, )
)    **No. 4:18-cv-00221-BCW**
   v. )
)
LAN-TEL COMMUNICATIONS SERVICES, INC., )
)
                Defendant. )

## PLAINTIFFS' SUGGESTIONS IN OPPOSITION TO
## DEFENDANT'S MOTION FOR RELIEF FROM JUDGMENT

Come now Plaintiffs, by and through counsel, and for their suggestions in opposition to *"Defendant's Motion for Relief from Judgment with Suggestions in Support"* (ECF No. 50), state:

On June 18, 2019, this Court entered an Order granting plaintiffs summary judgment in this matter. (ECF No. 37). Eight months later, on February 19, 2020, defendant Lan-Tel Communications Services, Inc. ("Lan-Tel") filed its Motion for Relief from Judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. Lan-Tel asserts that the narrow doctrine of a depressed lawyer "abandoning" his client is an extraordinary circumstance which entitles Lan-Tel to extraordinary relief. As argued below, such extraordinary claims require extraordinary evidence, but Lan-Tel has not provided <u>any</u> admissible evidence in support of their claims. Failing there, Lan-Tel then attempts to relitigate the case, shifting its own failure to maintain and provide adequate business and financial records onto its prior lawyer, despite the fact that such documents were repeatedly requested by Plaintiffs' auditor from Lan-Tel's controller *directly.*

Thus, stripped of its veneers, Lan-Tel essentially wants Plaintiffs to bear the cost of Lan-Tel's hiring of a bad lawyer, and for its *own* failures to produce adequate business records as

required by ERISA. This position is facially without merit and does not improve with deeper analysis. Plaintiffs contend, uncontroversially, that Lan-Tel should bear the costs of its own failures.

As set forth below, Lan-Tel's motion must be denied. There are several independent grounds for denial. First, there are no bases set forth in Rule 60(b) or extraordinary facts identified in the record that justify setting aside the judgment. Second, Lan-Tel has not established that the delay in the filing of this motion is reasonable under Rule 60(c)(1). Finally, this matter was already adjudicated on the merits, so all of the defenses offered in II(C) of its motion (and its claims of ignorance of same) are irrelevant or groundless for purposes of resolving this motion.

## I.    RULE 60(b) IN GENERAL

Rule 60 of the Federal Rules of Civil Procedure provides that:

(b) On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;
(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
(4) the judgment is void;
(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
(6) any other reason that justifies relief.

(c) (1) A motion under Rule 60(b) must be made within a reasonable time – and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.

Rule 60(b) cannot be used in the Eighth Circuit to obtain recovery due to an attorney's incompetence. *Sutherland v. ITT Cont'l Baking Co.*, 710 F.2d 473, 476–77 (8th Cir. 1983). For a Rule 60(b) motion to prevail, the moving party must generally provide "'highly convincing' evidence supporting the motion[,] show good cause for failing to act sooner[, and] show that granting the motion will not impose an undue hardship on the other party." *Kotlicky v. U.S. Fidelity & Guar. Co.,* 817 F.2d 6, 9 (2d Cir.1987).

## II. RULE 60(b)(6) ("Any other reason that justifies relief")

Lan-Tel relies entirely on Rule 60(b)(6) as the basis for its request for relief, citing "extraordinary circumstances" to justify same. However, Lan-Tel mischaracterizes the applicable facts and incorrectly applies the law. In reality, the facts involved here are not extraordinary, and the weight of the precedent and case law on this issue actually mandate denial of Lan-Tel's motion.

### A. *The Circumstances Involved Here are not "Extraordinary"*

As the Supreme Court and the Eighth Circuit have repeatedly stated, the extraordinary relief afforded by Rule 60(b)(6) is available only in "extraordinary circumstances." *Buck v. Davis*, 137 S. Ct. 759, 777-778 (2017); *Gonzalez v. Crosby,* 545 U.S. 524, 535–38 (2005); *Ackermann v. U.S.*, 340 U.S. 193, 200 (1950); *see also Heim v. Comm'r*, 872 F.2d 245, 247 (8th Cir. 1989); *Fox v. Brewer*, 620 F.2d 177, 180 (8th Cir. 1980). This is partially because relief under the catch-all provision of Rule 60 "requires an intrusion into the sanctity of a final judgment." *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 496 F.3d 863, 868 (8th Cir.2007); *see also Watkins v. Lundell*, 169 F.3d 540, 544 (8th Cir.1999). It also requires overriding other important and longstanding judicial principles, such as the binding of clients to the acts or omissions of their attorneys. *See, e.g. Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395-397 (1993); *Link v. Wabash R. Co.*, 370 U.S. 626 (1962).

Lan-Tel cannot overcome these presumptions or others, in part because their situation does not involve extraordinary circumstances. Lan-Tel asserts that Mr. Roby suffers from depression which impacted his effectiveness as an advocate. Although sometimes serious, depression is also very common and thus not *ipso facto* extraordinary. The National Institute of Mental Health notes that "major depression is one of the most common mental disorders in the United States," estimating that approximately 17.3 million U.S. adults had one or more major depressive episodes in 2017 (63.8% of which resulted in "severe impairment"). 7.1% of all U.S.

adults thus experience one major depressive episode *each year*.[1] The World Health Organization estimates that one in four adults globally will be affected by mental or neurological disorders during their lifetime.[2] Such a common event is definitionally not "extraordinary."[3]

Of course, the question here is not whether depression is common in the population generally, but whether Mr. Roby's claimed depression affected Lan-Tel extraordinarily. But these statistics show why courts analyzing depression-related Rule 60(b)(6) cases hold that relief should be granted *rarely* and only in *extraordinary* circumstances. Courts have held that "[i]t is doubtful that in most cases relief should be given [under Rule 60(b)(6)] to grossly negligent counsel or to attorneys who are 'down in the dumps' because of personal problems," *In re Bott,* No. 03-40043, 2003 WL 25273846, at *3 (Bankr. D. Idaho May 30, 2003) (*citing DeBonavena v. Conforte,* 88 F.R.D. 710, 712 (D. Nev. 1981)), and have shown consistent "reluctance" to grant Rule 60(b)(6) relief in cases involving gross attorney negligence. *See Stefanopoulos v. City of New York,* 299 F. App'x 49, 50 (2d Cir. 2008). When relief is granted, extraordinary circumstances are proved through (a) corroborating evidence of the lawyer's mental state <u>and</u> (b) facts and evidence supporting a conclusion that the attorney constructively abandoned his clients. Lan-Tel has provided *neither* of these things.

### B. *Lan-Tel has not Provided any Substantive Evidence of a Mental Disorder*

Lan-Tel has provided no admissible evidence certifying the condition Mr. Roby is claimed to have or a treatment history of same. The only "evidence" that Mr. Roby even <u>has</u> a mental condition is derived from a single uncorroborated hearsay statement contained on page 7 of Lan-Tel's Rule 60(b)(6) motion, relayed by Lan-Tel's current counsel from some unknown

---

[1] <u>National Institute of Mental Health</u>, *Mental Health Information Statistics,* available <u>here</u>.
[2] <u>World Health Organization</u>, *World Health Report,* October 2001, available <u>here</u>.
[3] In so stating, Plaintiffs' counsel is not minimizing the *seriousness* of depression or other mental health afflictions. Every person involved in arguing or deciding this case has likely been impacted by depression personally or knows someone (close friends and family) that has.

person at Mr. Roby's prior law firm.[4] Plaintiffs do not doubt Mr. Napolitano's honesty, but the unsupported hearsay statement he relies on is insufficient to obtain relief.[5] Courts have provided Rule 60(b)(6) relief in a few cases where mental health was a factor, but in all such cases reviewed by Plaintiffs, affidavits proving the existence of a mental disorder – often from the afflicted attorney *and* their treating professionals – have been a significant portion of the court's analysis. *See, e.g., United States v. Cirami*, 563 F.2d 26, 33 (2d Cir. 1977) ("*Cirami II*"); *Boehner v. Heise*, No. 03 CIV. 05453 (THK), 2009 WL 1360975, at *3 (S.D.N.Y. May 14, 2009); *P.T. Busana Idaman Nurani v. Marissa by GHR Indus. Trading Corp.*, 151 F.R.D. 32, 34–35 (S.D.N.Y. 1993); *Ituarte by Ituarte v. Chevrolet Motor Div., Gen. Motors Corp.*, No. 86 CIV. 2843, 1989 WL 10562, at *4 (E.D.N.Y. Feb. 2, 1989); *DeBonavena*, 88 F.R.D. at 711; *L. P. Steuart, Inc. v. Matthews*, 329 F.2d 234, 235 (D.C. Cir. 1964). When relief has been denied, the lack of corroborating evidence was a substantial rationale. *See United States v. Cirami*, 535 F.2d 736, 740 (2d Cir. 1976) ("*Cirami I*"); *Blazina v. Port Auth. of New York & New Jersey*, No. 06 CIV. 0481 (KNF), 2009 WL 1097322 (S.D.N.Y. Apr. 22, 2009), *rev'd on other grounds*, 361 F. App'x 180 (2d Cir. 2010). Lan-Tel's motion should be denied on this point alone.

### C. *Lan-Tel has not Demonstrated Constructive Abandonment by Counsel*

Even if Lan-Tel were to provide an affidavit from Mr. Roby or his therapists certifying that a serious mental health existed during his representation of Lan-Tel, this would not change the result. Lan-Tel must provide "highly convincing" facts and evidence demonstrating that Mr. Roby constructively abandoned Lan-Tel. *Cirami II,* 563 F.3d at 33. Here, the facts show that Mr. Roby did <u>not</u> abandon his client, given his regular correspondence with Plaintiffs' counsel, his filing of

---

[4] Lan-Tel's brief cites hearsay-within-hearsay-within-hearsay, stating that their new lawyer spoke with an unidentified person at Mr. Roby's firm, who told him that Mr. Roby had reported to *them* that he was suffering from depression.

[5] Plaintiffs' counsel does not seriously dispute that Mr. Roby likely has some ailment that has negatively affected his law practice, noting that license has been suspended as of February 13, 2020 (*In re: Eric Damen Roby*, SC98358). Plaintiffs' only argue that other Courts assessing the issue have required affidavits from the afflicted and their treating professionals, and that Lan-Tel did not provide this (or any other admissible evidence) to support their claim.

motions for extension, his response to Plaintiffs' garnishment, and his attendance at Court hearings and mediation (<u>SUMF</u>, ¶¶ 2, 4-5, 8, 10, 12-13, 18).

This is plain from a review of Rule 60(b)(6) cases, including those cited by Lan-Tel. For example, Lan-Tel cites *Cirami II* for the proposition that an attorney's depression can cause a "constructive disappearance" entitling the movant to Rule 60(b)(6) relief. The court in *Cirami II* stated that an attorney constructively disappears if a psychological disorder which "manifested itself to his clients only after they had relied on him for months" leads him to "neglect almost completely his clients' business while at the same time assuring them that he was attending to it, and who had made himself unavailable even to the trial judge." 563 F.2d at 34.

Counsel in this case and in *Cirami II* both missed a summary judgment deadline. But this is where the similarities end. Here, unlike in *Cirami II*, Mr. Roby *did* make himself available to this Court, attending every scheduled hearing (ECF No. 11, 32) and a required mediation (<u>SUMF</u>, ¶7). He filed numerous extensions for time to respond to pending motions (<u>SUMF</u>, ¶¶10, 12), and corresponded frequently with Plaintiffs' counsel (<u>SUMF</u>, ¶¶4-5, 8, 18). Finally, the *Cirami II* court noted that the Ciramis were "frequently inquiring about the status" of the lawsuit but were lied to by their lawyer. The court concluded that "movants do not appear to have been themselves neglectful," because if they had been, their motion would not be cognizable under Rule 60(b)(6). *Cirami II*, 563 F.2d at 35. Here, the affidavit supplied by Lan-Tel does not actually describe any instances where Lan-Tel inquired or followed up about pending or active litigation, even after it became aware of same. The only statement in Mr. Niemeyer's affidavit is that he believed that his lawyer was waiting on additional information from Plaintiffs, and the next thing he heard was that a garnishment had been filed. (ECF No. 50-1, at ¶5). But mediation was held on November 5, 2018 and Plaintiffs' first garnishment was filed over eight months later, on July 18, 2019 (<u>SUMF</u>, *supra* at ¶¶7, 17). Mr. Niemeyer's affidavit does not reveal that he followed up "frequently" or, in fact, *at all*. His affidavit avers only that he passively

awaited communication from his lawyer for over eight months, the exact type of "neglect" which the Ciramis (through frequent follow-up) did not exhibit.

The other case relied upon by Lan-Tel is *Boughner v. Sec. of Health Educ. & Welfare*, 572 F.2d 976 (3rd Cir. 1978). The *Boughner* court found that an attorney constructively abandoned his clients by failing to respond to a summary judgment deadline because he also failed to make necessary filings for fifty-two *other* clients in the same time frame. *Boughner* stands for the principle that constructive abandonment can be shown if an attorney effectively abandons *many* clients. Here, Lan-Tel effectively argues that Mr. Roby abandoned them by committing malpractice in only *some* of his cases, by failing to notify Lan-Tel of four state-court cases filed against them in which defaults had been entered, and two more cases (in addition to the instant case) which Mr. Roby had failed to meet filing deadlines or otherwise mishandled.

What Lan-Tel does not show is that Mr. Roby effectively abandoned them or any other client. Lan-Tel states only that seven of *their own* cases were affected. This is orders of magnitude lower than the affected case numbers in *Boughner*, and no evidence has been submitted which shows that *any* of Mr. Roby's other clients were also negatively affected during his law practice. Also, it's not even clear that all of Lan-Tel's cases were negatively affected; Mr. Roby fully defended and favorably settled at least one federal court case for Lan-Tel during approximately the same time period, *e.g. Kansas City Cement Masons Pension Fund et al. v. Lan-Tel Communications Services, Inc.*, 4:16-cv-01258-JTM (W.D. Mo. Nov. 30, 2016), as well as several Jackson County court cases for Lan-Tel during approximately the same time period, *see Southwestern Bell Teleph. v. Lan-Tel Communications*, Jackson County Case No. 1716-CV12495 and *Stephen Rodriguez v. Lan-Tel Communications*, Jackson County Case No. 1816-CV-17363. Lan-Tel cannot show even that Mr. Roby effectively abandoned *them* specifically, let alone *all* his clients as was the case in *Boughner*.

There are a few additional cases involving attorney depression not cited by Lan-Tel in its brief, but these cases also provide no help to (and, in fact, actively hurt) Lan-Tel's argument, for reasons already set forth above. For example, in *P.T. Busana,* 151 F.R.D. 32, litigants submitted affidavits from former counsel *and her psychiatrist* that she was undergoing treatment for severe depression. As stated above, Lan-Tel provided no affidavits at all, and a single, unsupported hearsay-within-hearsay-within-hearsay statement has *never* been the basis for a grant of relief under Rule 60(b)(6). In *Boehner,* 2009 WL 1360975, the court found that failure to respond to client inquiries or court orders in a two-month period constituted constructive abandonment.[6] But here, Mr. Roby attended hearings and a mediation, and responded to inquiries from the Court, the Mediator, and Plaintiffs' counsel. Lan-Tel also submitted no evidence that Mr. Roby failed to reply to their inquiries – in fact, its affidavit actually shows that it never bothered to keep apprised of the status of its cases in the first place.

The bottom line is that, while Rule 60(b)(6) has provided relief in *some* cases involving attorney depression, none of these cases in which relief was granted (whether cited by Lan-Tel or not) help Lan-Tel in this case, on these facts. Lan-Tel's motion and accompanying suggestions in support have not, and cannot, demonstrate entitlement to Rule 60(b)(6) relief. Lan-Tel's motion must therefore be denied.

### III.    RULE 60(c) ("TIMING AND EFFECT OF THE MOTION")

As set forth in Rule 60(c), motions made under Rule 60(b) "must be made within a reasonable time." This requires the movant to seek relief "in a timely fashion." *Cirami II,* 563 F.2d 26 at 32; *see also P.T. Busana,* 151 F.R.D. at 34; *Wagner v. New York Univ. Medical Ctr.,* No. 82 Civ. 1919, 1986 WL 2194 *2 (S.D.N.Y.1986). A Rule 60(b) motion is not timely merely because it was filed less than one year after the entry of judgment. *Armstrong v. The Cadle Co.,*

---

[6] Prior counsel and his psychiatrist also submitted affidavits in support of the motion in *Boehner,* a consistent theme in other Rule 60(b)(6) cases, as discussed in II(B), *supra.*

239 F.R.D. 688 (S.D. Fla. 2007). Rather, a "reasonable time" evaluation requires a balancing test of all the circumstances in the case, weighing "the interest in finality with the reason for the delay" and "consider[ing] the possibility of prejudice to the opposing party." *Cirami II,* 563 F.2d at 35 (*citing PRC Harris, Inc. v. Boeing Co.,* 700 F.2d 894, 897 (2d Cir.), *cert. denied,* 464 U.S. 936, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983); *see also In re Emergency Beacon Corp.,* 666 F.2d 754, 760 (2d Cir.1981); *Vindigni v. Meyer,* 441 F.2d 376, 377 (2d Cir.1971); *Ashford v. Steuart,* 657 F.2d 1053 (9th Cir. 1981); *P.T. Busana,* 151 F.R.D. at 35-36. Whether the delay is related to the pursuit and exhaustion of appeals is a weighty factor. *See, e.g. Harris v. Union Elec. Co.,* 846 F.2d 482 (8th Cir. 1988); *Harduvel v. Gen. Dynamics Corp.,* 801 F. Supp. 587, 603-604 (M.D. Fla. 1992) (finding a delay could be reasonable, but holding that "the [movant] should have pursued the instant Rule 60(b) motion" while its other actions were pending.) But when the time for appeal has passed, "the interest in finality must be given great weight." *Ashford,* 657 F.2d at 1055. Here, a ruling in Lan-Tel's favor would upset the finality of judgment and prejudice Plaintiffs, and Lan-Tel cannot show that their delay in filing was reasonable or that the extraordinary circumstances they argue permit relief in this matter also operate to explain their delay in filing. Therefore, on balance, their motion must be denied as untimely.

A review of several cases, including the *Cirami II* case cited by Lan-Tel, are instructive. In *Cirami II,* the Ciramis filed their new Rule 60(b)(6) motion just two and one-half months after the *Cirami I* decision was handed down, which was considered timely under the circumstances. *Cirami II,* 563 F.2d at 32. The movants in *P.T. Busana* also timely filed their motion two months after it learned of entry of judgment against it, and *during* that two months the movant also made seven attempts to contact former counsel by a variety of methods. 151 F.R.D. at 35–36. A three-month and 13-day delay in filing was reasonable when movant made diligent and active efforts to strengthen its basis for motion and find local counsel with whom to associate. *Bouret-Echevarria v. Caribbean Aviation Maintenance Corp.,* 784 F.3d 37 (1st Cir. 2015). An eleven-

*week* delay was reasonable in *Werner v. Carbo*, 731 F.2d 204 (4th Cir. 1984), but eleven *months* was unreasonable in *Marks v. U.S. Social Sec. Admin.*, 963 F.Supp. 517 (E.D. Va. 1997) and *La Barbera v. Whitney Trucking, Inc.*, 245 F.R.D. 142 (S.D.N.Y. 2007). A four-month delay was unreasonable on the facts in *Limon v. Double Eagle Marine, LLC*, 771 F.Supp.2d 672, 677 (S.D. Tex. 2011), where, just as here, the movant cited its discussions with opposing counsel to obtain discovery first instead of running to the courthouse as the basis for its delay.

Lan-Tel's motion comes eight months after entry of judgment against it, seven months after Plaintiffs' first garnishment of its bank accounts, and more than five months after entry of appearance by replacement counsel (SUMF, ¶15, 17, 20), with no facts in the record regarding Lan-Tel's efforts to contact former counsel, ascertain the status of the case, or obtain evidence and facts needed to bolster the instant motion. True, after entry of new counsel, counsel for Lan-Tel has regularly engaged Plaintiffs. (SUMF, ¶21). But Lan-Tel attempted to pursue recovery from Mr. Roby's malpractice carrier when settlement failed. Only after pursuing *both* those avenues in sequence has Lan-Tel now decided to cast its third "Hail Mary," seeking relief under Rule 60(b)(6). None of the cases reviewed by Plaintiffs or cited by Lan-Tel justify a delay in its seeking of Rule 60(b) relief. The date on which it could have reasonably determined the truth of its legal situation was eight months ago, the date of Plaintiffs' first garnishment, but on these facts, even the five-month delay (the date of entry of appearance of replacement counsel) is unreasonable. For these reasons, Lan-Tel's motion should be considered untimely.

## IV. LAN-TEL'S "DEFENSES" ARE IRRELEVANT AND MERITLESS

As argued above, Lan-Tel cannot overcome any of the heavy presumptive hurdles against it. Lan-Tel cannot prove extraordinary circumstances exist, cannot prove constructive abandonment by prior counsel, and cannot prove it timely filed its request for extraordinary relief. All of these bases would be independent grounds for denial of the motion. Lan-Tel nevertheless

spends several pages of its brief arguing that that it would have been successful on the merits if the judgment were vacated. For the reasons set forth below, these arguments should also be rejected.

First, Rule 60(b) relief is designed to afford parties an opportunity to resolve disputes on the merits, given the judicial preference for merit adjudications. *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 784 (8th Cir. 1998); *Oberstar v. F.D.I.C.*, 987 F.2d 494, 504 (8th Cir. 1993). But Rule 60(b) motions are *not* "a vehicle for simple reargument on the merits," *Broadway v. Norris,* 193 F.3d 987, 990 (8th Cir. 1999); *Terra Int'l v. Robinson,* 113 Fed. Appx. 723, 725 (8th Cir. 2004) (unpublished *per curiam op.*), especially where the case has been fully adjudicated via summary judgment. *See Dicken v. Ashcroft,* 972 F.2d 231, 233 n. 5 (8th Cir.1992). Rehearing the case, at this stage, gives Lan-Tel a second bite at the apple to which they are not entitled.[7]

But, assuming *arguendo* that Rule 60(b) relief in these circumstances does require a review of Lan-Tel's defenses, such a review would also look to "whether the conduct of the defaulting party was blameworthy or culpable." *Stephenson v. El-Batrawi*, 524 F.3d 907, 912 (8th Cir. 2008); *see also Dayton Elec.,* 140 F.3d at 784. Here, Lan-Tel itself, along with its prior lawyer, was blameworthy. While the first two objections to Plaintiffs' audit raised in Lan-Tel's motion *are being raised here for the first time* (which is, itself, problematic), the latter two were raised by Lan-Tel prior to the entry of summary judgment. In fact, following mediation, when Lan-Tel's controller was directly asked by Plaintiffs' auditor to provide evidence and records to support Lan-Tel's audit objections, she repeatedly failed to do so.

Lan-Tel's first two objections were never specifically discussed in discussions between Lan-Tel and the auditor or between the parties' attorneys prior to this motion. (Rote Aff. ¶¶9-11; Westerhaus Aff. ¶¶15-16). The parties did engage in discussion as to Lan-Tel's other two objections. (Rote Aff. ¶¶9-11; Westerhaus Aff. ¶¶17-18); however, in every instance of

---

[7] Lan-Tel's reliance on *Stephenson v. El-Batrawi,* 524 F.3d 907 (8th Cir. 2008) is confusing, as that case involved a Rule 60(b) motion after a default judgment, as do most of the cases cited *supra* for the proposition that the underlying merits of the case are relevant to resolving Rule 60(b) motions. This case does not involve a default judgment.

correspondence with Mr. Roby or Lan-Tel's controller (Karen Burns), Plaintiffs' auditor and Plaintiffs' counsel requested specific supplemental and documentary information to support Lan-Tel's objections, and no such information was ever provided despite repeated requests for same. (SUMF, ¶¶8-9).

For example, in attempting to set up an audit, Amy Rote, auditor for CBAC, left several unreturned messages for Lan-Tel's Scott Niemeyer. She also received no response to several voice messages left for Lan-Tel's controller. Contact was eventually made with Karen Burns, and Ms. Rote conducted her payroll audit on July 10, 2018. After the audit, Ms. Rote requested additional documents related to outside-payroll payments and back wages payments, so items could be substantiated and removed from the audit if appropriate. No such information was ever received despite repeated requests. (See Rote Aff. ¶¶2, 4, 9-11). Here, Lan-Tel itself failed to provide this information, not its prior lawyer, even if he was negligent in other areas of the case.

Another example: On November 5, 2018, the parties engaged in mediation. Lan-Tel was in attendance with counsel, as required by the MAP General Order Art. V(E). The contents of the mediation are confidential pursuant to MAP General Order Art. VIII(A), so Plaintiffs cannot discuss the matters discussed in mediation or the issues Plaintiffs or Lan-Tel raised. However, in discoverable correspondence with Mr. Roby *after* mediation, Plaintiffs requested information from Lan-Tel related to its purchase of Universal Technologies, including worker affidavits or other evidence concerning the out-of-payroll wage payments and payments to Universal Technologies employees, so that such items could be removed from the audit if appropriate.[8] Lan-Tel never provided any such requested information (Westerhaus Aff. ¶¶15-18), yet it still argues that the items should be removed from the audit in II(C)(3)-(4) of its brief in support of the instant motion.

Lan-Tel's failures to provide information directly requested from it requires a finding against it, not just in a practical sense, but because failure to provide this information was a

---

[8] These requests were made informally via email, and also formally through Requests for Production (ECF No. 13).

violation of its legal obligations to Plaintiffs. It is well-settled that Lan-Tel is obligated under ERISA section 209 (29 U.S.C. § 1059) to "maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees." Employee benefit plans such as the Plaintiff Funds have the right under ERISA sections 502 and 515 (29 U.S.C. §§ 1132 and 1145) to conduct an audit of a signatory employer's books and records to ensure the accuracy of contributions made to employee benefit plans. *See Central States, SE & SW Areas Pension Fund v. Central Transport, Inc.*, 472 U.S. 559 (1985). When the records maintained by the employer are inadequate to accurately determine the amount of contributions payable, the burden is on the *employer* to prove the amount of contributions owed, or prove that workers were not performing work covered by the collective bargaining agreement, or the like. *See, e.g., Brick Masons Pension Tr. v. Indus. Fence & Supply, Inc.*, 839 F.2d 1333, 1337–38 (9th Cir. 1988); *Combs v. King*, 764 F.2d 818, 825 (11th Cir. 1985); *Central States, SE & SW Areas Pension Fund v. Central Transport, Inc.*, 698 F.2d 802, 811 (6th Cir. 1982).

Lan-Tel, not its prior lawyer, is obligated under ERISA to maintain and provide these documents. Requests for same were made *directly* to Lan-Tel representatives by Plaintiffs' auditor. Lan-Tel was told *directly* what documents it would need to provide during the audit, and when Lan-Tel later raised objections to the audit findings, Lan-Tel was told *directly* what documents would need to be provided to substantiate its objections. No such supporting documentation was ever provided. So, even if one accepts Lan-Tel's argument above that its prior lawyer failed them in some very significant ways, this particular failure is not solely on him. Consequently, Lan-Tel's "defenses", such as they are, must be rejected.

## V.   LAN-TEL'S REMEDY IS MALPRACTICE ACTION, NOT RULE 60(B)(6) RELIEF

Lan-Tel argues that the facts involved in this case are extraordinary, and entitle it to the extraordinary relief under Rule 60(b). As argued above, Lan-Tel is not entitled to such relief – it has failed to prove its case in any form, and is itself culpable for failing to regularly follow-up with

their lawyer or provide documents to Plaintiffs when directly requested from them. This is bad news for Lan-Tel. The good news is that, in the 8th Circuit, a remedy may be available: a malpractice action against their prior lawyer, since Mr. Roby was undoubtedly negligent. *See Heim v. Comm'r*, 872 F.2d 245, 249 (8th Cir. 1989) ("[T]he Heims have a legitimate ground for complaint against Jukkala [but] they have not established justification for reopening this case.")

Judge Easterbrook's opinion in *Choice Hotels Int'l, Inc. v. Grover*, 792 F.3d 753 (7th Cir. 2015), denying relief under Rule 60(b)(6), is instructive in this regard. Judge Easterbrook noted that extensive U.S. Supreme Court precedent requires litigants to be "bound by the acts and omissions of their chosen agents" and that even intentional misconduct of lawyers is likewise imputed to their clients." 792 F.3d at 754 (*citing Wabash*, 370 U.S. 626 and *National Hockey League v. Metro-politan Hockey Club, Inc.,* 427 U.S. 639 (1976)). The aggrieved party has a remedy against their negligent lawyer in a malpractice action, not their "innocent adversary":

> Lawyers sometimes fail to protect their clients' interests, and the district judge observed that the remedy for legal neglect lies in a malpractice suit against the lawyer, rather than continuing the original litigation and upsetting the adversary's legitimate expectations based on a final judgment. Litigants who choose a poor lawyer may bear the costs themselves, or shift them to the lawyer, but cannot shift them to an adversary who bore no fault for the problem. (Johnson unquestionably is a poor lawyer. The Supreme Court of Indiana suspended him from practice on March 20, 2014 . . .) . . . When lawyers fail, the remedy is malpractice litigation against the wrongdoer, *not more litigation against an innocent adversary* in the original litigation.

*Id* (*emphasis added*). Judge Easterbrook also cited *Tolliver v. Northrop Corp.,* 786 F.2d 316 (7th Cir.1986) for the proposition that "it is important to visit the consequences on the bad lawyer rather than the innocent adversary":

> Holding the client responsible for the lawyer's deeds ensures that both clients and lawyers take care to comply. If the lawyer's neglect protected the client from ill consequences, neglect would become all too common. It would be a free good—the neglect would protect the client, and because the client could not suffer the lawyer would not suffer either. The court's power to dismiss a case is designed both to elicit action from the parties in the case at hand and to induce litigants and lawyers in other cases to adhere to timetables. A court cannot lightly excuse a litigant because of the lawyer's neglect without abandoning the pursuit of these objectives.

*Id.* (quoting *Tolliver,* 786 F.2d at 319). Judge Easterbrook concluded that "civil litigants are responsible for their own choices and their own inaction," and that "monetary compensation via a malpractice action is an adequate recompense for an adverse judgment" because "[c]ivil litigants can hire replacement counsel freely." *Id* at 756.

Lan-Tel obviously hired a bad lawyer. What is not obvious is why Lan-Tel believes that Plaintiffs should bear the consequences for that decision. Lan-Tel had the free choice to hire or fire their legal counsel at any time, and a responsibility to monitor them during the duration of the representation. Lan-Tel did not do this. To the extent the bad result it received is attributable to their prior lawyer, any relief should be sought in a malpractice action, rather than against innocent Plaintiffs who had no involvement in Lan-Tel's choice legal representation. Of course, the record above shows that Lan-Tel itself bears at least some responsibility for the result. But the relative proportion of responsibility and allocation of damages for these failures is an argument for a different day and time, with different litigants, in a different court than this one.

VI.    **CONCLUSION**

As argued above, Lan-Tel cannot prove extraordinary circumstances exist, cannot prove constructive abandonment by prior counsel, cannot prove it timely filed its request for extraordinary relief, and has no relevant defenses to its conduct or to the underlying merits of Plaintiffs' case. All of these bases would be independent grounds for denial of the motion. Therefore, for any or all of the above stated reasons, plaintiffs respectfully request the Court to enter its order denying Defendant's Motion for Relief from Judgment.

Respectfully Submitted,

ARNOLD, NEWBOLD, SOLLARS & HOLLINS, P.C.

John J. Westerhaus
MO Bar No. 65266, W.D. MO Bar No. KS-000931
1100 Main Street, Suite 2001

Kansas City, Missouri 64105
Telephone: (816) 421-5788
Facsimile: (816) 471-5574
E-mail: jjwesterhaus@a-nlaw.com

**Attorney for Plaintiffs**

## CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following: Mr. Christopher M. Napolitano, ENTZ & JESTER, P.C., 1100 Main Street, Suite 2121, Kansas City, MO 64105, Attorney for Defendant. A courtesy copy was also hand-delivered.

/s/ John J. Westerhaus
John J. Westerhaus